UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MONA WEEKS,<br><br>               Plaintiff,<br><br>v.<br><br>KIANNA OSWALD, individually, and RICHARD CLARK, individually,<br><br>               Defendants. | Case No. 1:12-cv-000082-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is the United States' motion to substitute itself as the sole defendant in this case under the Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. § 2679(d). (Dkt. 2.)[1] Plaintiff Mona Weeks opposes the United States' motion, arguing that substitution is improper because the individually named federal employees (both of whom are employed by the Transportation Security

---

[1] The United States' motion also requests that the Court dismiss the case under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction as well as failure to exhaust administrative remedies. (Dkt. 2.) This order addresses only whether the United States should be substituted as the sole party defendant in this case.

**MEMORANDRUM DECISION AND ORDER - 1**

Administration) were not acting within the scope of their employment at the time of the allegedly tortious conduct identified in Plaintiff's complaint.

During the telephonic scheduling conference held on March 29, 2012, the Court ordered the parties to file supplemental statements of fact and accompanying affidavits to clarify the scope of employment issue. (Dkt. 8.) The Court has received and reviewed the parties' supplemental materials. As explained more fully below, the Court finds no dispute as to the character of Defendant Kianna Oswald's acts. Consequently, the Court will grant the United States' motion to substitute itself as a party defendant in place of the individually named Defendant Kianna Oswald. However, the Court finds that Plaintiff has presented facts raising a genuine dispute as to the character of Defendant Richard Clark's acts – namely, whether his allegedly tortious actions were taken in furtherance of a private purpose rather than in furtherance of his employer's business. Given these findings, the Court concludes that an evidentiary hearing is necessary to resolve the scope of employment issue concerning Defendant Richard Clark and will defer further ruling on the United States' motion as it relates to Defendant Richard Clark until after the evidentiary hearing.

## BACKGROUND

On February 3, 2012, Mona Weeks brought an action in Idaho state court against defendants Kianna Oswald and Richard Clark (collectively "Defendants"). At the time of the incident giving rise to this action, Plaintiff and Defendants were all employees of the Transportation Security Administration ("TSA") working at the Twin Falls Airport in

**MEMORANDRUM DECISION AND ORDER - 2**

Twin Falls, Idaho. (*Pl.'s Statement of Facts* ¶ 2, Dkt. 13.) Defendants held supervisory level positions and all the parties worked with or around one another. (*Oswald Decl.* ¶ 2, Dkt. 9-1; *Clark Decl.* ¶ 2, Dkt. 9-2.) Plaintiff alleges that in 2011, Defendants falsely accused Plaintiff of engaging in inappropriate behavior in the family restrooms[1] at the Twin Falls Airport with an officer from the Twin Falls Police Department. (*Pl.'s Statement of Facts* ¶ 7, Dkt. 13.) Plaintiff admits to using the family restroom regularly for health reasons, but denies that she ever shared or entered the family bathroom at the same time as anyone else. (*Weeks Aff.*, Dkt. 13-2 at 5.) Ultimately, Plaintiff lost her job with the TSA over the allegations made by Defendants. Plaintiff's complaint alleges that the false statements constituted defamation and that Defendants' actions constituted both negligent and intentional infliction of emotional distress.

Shortly before Defendants made allegations about Plaintiff's conduct, Plaintiff had raised concerns with Defendant Oswald and her other supervisors, claiming that her work environment was hostile. (*Id.* at 2.) Her concerns included Defendant Clark. Additionally, Plaintiff states that she had negative dealings with Defendant Clark's girlfriend, who had been openly hostile after Plaintiff reported that the two had been showing inappropriate displays of affection in the office and break room. (*Id.* at 5.) Plaintiff asserts that her supervisors did nothing to remedy the hostile work environment. (*Id.*)

---

[1] A family restroom, in contrast with typical gender-based airport restrooms, is a single large room with a lock on the door for privacy suitable for people with special needs or families with children. They are public and, according to Plaintiff, frequently used by airport personnel for privacy and cleanliness reasons.

**MEMORANDRUM DECISION AND ORDER - 3**

On April 14, 2011, Defendant Clark was on the airport premises during his day off to "check emails" when he claims to have witnessed a uniformed male Twin Falls police officer exiting the family restroom. (*Weeks Aff.* at 4.) Immediately after, Defendant Clark attempted to use the restroom but found the door locked. (*Id.*) A few minutes later, Defendant Clark observed Plaintiff leaving the same family restroom and asserts that at no point between these two events did he see anyone else enter the restroom. (*Id.*) Approximately seven days later, Defendant Oswald was performing her normal TSA duties at the time that she claims to have witnessed a similar series of events where a uniformed Twin Falls police officer exited the family restroom only minutes after Plaintiff exited the same restroom. (*Id.* at 4-5.; *Oswald Decl.* ¶ 4, Dkt. 9-1.) The officer was not seen entering the restroom after Plaintiff's exit, suggesting to Defendant Oswald the two individuals had been in the family restroom at the same time. (*Id.*; *Oswald Decl.* ¶ 4, Dkt. 9-1.)

Defendants Oswald and Clark reported their separate observations to their immediate supervisors in accordance with TSA policies and directives, provided written reports, and cooperated in an internal investigation of the incidents conducted by the Twin Falls Police Department. In May of 2011, after the internal investigation, Plaintiff was terminated from her employment with TSA for inappropriate conduct and lack of candor.

**MEMORANDRUM DECISION AND ORDER - 4**

## DISCUSSION

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common law tort claims arising out of acts undertaken during the course of their official duties. The Westfall Act's stated purpose is to "protect Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States." Pub. L. No. 100-694, § 2(b). As a means to achieve this purpose, the Westfall Act provides federal employees with immunity from ordinary tort suits if the complained of conduct arises out of acts performed within the scope of the defendant employee's employment. 28 U.S.C. § 2679(d)(1).

The Westfall Act allows the Attorney General to certify that the "defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Id.* The Act further provides that "[u]pon certification . . . such claim . . . shall be deemed an action against the United States under the provisions of [the Federal Tort Claims Act], and the United States shall be substituted as the party defendant." *Id.* Once the court has substituted in the United States as the defendant, the plaintiff's only avenue of recovery is under the FTCA. *See Osborn v. Haley*, 549 U.S. 22, 230 (2007).

Because Defendants in this case are both federal employees, the United States invoked the Westfall Act and received from the Attorney General certification that the employees were acting within the scope of their employment. The Attorney General's decision regarding scope of employment certification is conclusive unless challenged. *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993). "[T]he party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence." *Id.* In this case, Plaintiff has challenged the scope of employment certification. The Attorney General's scope of employment certification is subject to *de novo* review in the district court. *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991).

In determining whether a United States employee acted within the scope of his or her employment within the meaning of the Westfall Act, the Court applies the *respondeat superior* principles of the state in which the alleged tort occurred. *Green*, 8 F.3d at 698-99. The FTCA also authorizes the district court to hold an evidentiary hearing to resolve any factual disputes regarding scope of employment. *Pelletier v. Federal Home Loan Bank of San Francisco*, 968 F.2d 865, 874 (9th Cir. 1992).

1.     **Scope of Employment**

Under Idaho state law, an employee's conduct is generally within the scope of employment if it: (1) is of the kind that he or she is employed to perform; (2) occurs substantially within the authorized limits of time and space; and (3) is actuated, at least in part, by a purpose to serve the employer. *Podolan v. Idaho Legal Aid Services, Inc.*, 123

**MEMORANDUM DECISION AND ORDER - 6**

Idaho 937, 944 (Idaho Ct. App. 1993). However, "if the employee acts from 'purely personal motives . . . in no way connected with the employer's interest' . . . then the master is not liable." *Id.*

Here, Plaintiff does not appear to dispute that the allegedly tortious conduct occurred within the temporal and spatial boundaries of Defendants' employment. Plaintiff contends, however, that the first and third prongs of the scope of employment analysis do not support the Attorney General's scope of employment certification. Those prongs of the analysis will be discussed below.

    **A.    Type of Conduct**

"The scope of one's employment encompasses 'those acts which are so closely connected with what the servant is supposed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods of carrying out the objectives of employment.'" *Id.* (quoting *Birkner v. Salt Lake County*, 771 P.2d 1053, 1056 (Utah 1989). The record in this case indicates that both Defendant Oswald and Defendant Clark were supervisory-level TSA employees stationed at the Twin Falls Airport at all times relevant to this lawsuit. As supervisors, it was within their employment duties to keep track of subordinate employee actions, which included being aware of any suspicious or inappropriate activity. (*Oswald's Decl.*, Ex. B, Dkt. 9-1 at 31.) The TSA handbook indicates that simple observation and requisite reporting of suspicious activity bears close connection to Defendants' jobs of supervising employees regardless of whether Defendants are the direct supervisors of those employees. *Id.* Additionally, both

**MEMORANDRUM DECISION AND ORDER - 7**

Defendants apparently were acting within their employment duties when they reported their observations to their immediate supervisors in accordance with TSA policies[2] and directives, and when they cooperated in an internal investigation of the incident conducted by the Twin Falls Police Department. *Id.*

Plaintiff argues that Defendants' conduct in making false allegations to their supervisors is contrary to company policies and directives and therefore outside the conduct that TSA employed them to perform. Plaintiff's argument misconstrues the first prong of the analysis. Even assuming the accusations were false, the false nature of the reports by itself does not remove their reporting from the type of conduct they were employed to perform. *See Davric Maine Corp. v. United States Postal Service*, 238 F.3d 58, 67 (1st Cir. 2001) (hereinafter *Davric*).[3] This prong concerns only the physical acts performed by Defendants and not their motivations for doing so. In this case, the observing of suspicious or inappropriate conduct, the reporting of that conduct, and the making of allegations while participating in the course of an internal investigation were all acts that were of the kind that TSA employed Defendants to perform.[4]

---

[2] TSA MANAGEMENT DIRECTIVE No. 1100.73-5 No. 5 sec. 9: Reporting any known or suspected violation of law, rule, regulation, or Standard Operating Procedure (SOP) by a person to a manager in the chain of supervision and/or to the Office of Inspection (001), whenever such violation may affect TSA operations or when it occurs in the workplace.
[3] First Circuit Court of Appeals applied Maine state law consistent with Idaho state law.
[4] The Court recognizes that employers do not encourage or expect "false" reporting, but the truth or falsity of the reports made by Defendants does not remove their actions in making the reports from the scope of their employment duties.

**MEMORANDRUM DECISION AND ORDER - 8**

The Court's holding is supported by the Third Circuit's decision in *Brumfield v. Sanders*, 232 F.3d 376 (3d Cir. 2000), where a federal correctional officer brought an action against coworkers for intentional infliction of emotional distress and defamation arising out of the coworkers' allegedly false statements during an internal investigation. The court held that, even if personal animosity motivates false statements, such statements (and affidavits) are given at the request of officials to aid them in their official investigation and are therefore made by the employees while acting within the scope of employment. *Id.* The *Brumfield* court also rejected the argument that "the course of employment does not include commission of unlawful acts or acts contrary to orders, policies, procedures and standards" of the employer and, instead, held that the falsity of statements made during the course of an official investigation does not render those statements outside the scope of employment. *Id.*

Like *Brumfield*, this case involves reports and statements made during the course of an investigation. Both Defendant Oswald and Defendant Clark made their reports and statements in accordance with TSA policies as well as at the behest of the Twin Falls Police Department to assist in its official investigation. Because Defendants made their allegedly false statements during the course of an official investigation, albeit instigated in part by them, their conduct satisfies the first prong of the scope of employment analysis.

**MEMORANDRUM DECISION AND ORDER - 9**

B.   **Motivation of Conduct**

For an employee's actions to come within the scope of his or her employment, so that an employer may be held vicariously liable for those actions under the doctrine of *respondeat superior*, the employee's purpose or intent, however misguided in its means, must be to further the employer's business interests. *Podolan*, 123 Idaho at 945 (quoting *Birkner v. Salt Lake County*, 771 P.2d 1053, 1056 (Utah 1989)). If the employee acts from purely personal motives in no way connected with the employer's interest, there is no *respondeat superior* liability. *Id.*; *See also* Restatement (Second) of Agency § 235 cmt. A, illus. 2 (1958) (even an act that unintentionally aids the employer, if done purely from personal motivation, places that act outside the scope of employment). The First Circuit Court of Appeals has held that, where a federal employee does seemingly work-related acts but with a private purpose to retaliate or discriminate against the plaintiff, such acts may fall outside the scope of employment. *Davric*, 238 F.3d at 66 (applying Maine law which is consistent with Idaho's *respondeat superior* law).

Plaintiff argues that Defendants were acting outside the scope of their employment because personal retaliation was the sole motivation leading to Defendants' actions, not an intent to further the employer's business. Plaintiff contends that Defendant Clark's reports and allegations against her were retribution for the reports that she previously filed against Defendant Clark claiming hostile work environment and inappropriate displays of affection. Plaintiff also contends that Defendant Oswald had private or personal motivations for making false allegations, although Plaintiff does not suggest or

**MEMORANDRUM DECISION AND ORDER - 10**

provide specific evidence beyond Defendant Oswald's alleged failure to address Plaintiff's hostile work environment concerns.

Defendants counter by asserting that the record establishes that both Defendants were on-duty at their workstations, performing their respective job duties at all relevant times, and required to report their observations to their superiors under TSA policies and directives. The Court agrees that on its face, the record suggests that the Defendants acted within the scope of employment. Plaintiff has the burden to demonstrate that Defendants' actions were not in furtherance of the employer's business.

The Court is not without guidance on this issue. In *Davric Maine Corp. v. United States Postal Service*, the First Circuit rejected an argument that a federal employee's actions were outside the scope of employment because the allegedly tortious conduct was motivated by an adverse personal animus toward the plaintiff. *Davric*, 238 F.3d at 58. In that case, the owner of a site under consideration by the United States Postal Service as a new postal facility brought suit against an employee of the Postal Service. *Id.* The plaintiff alleged that the employee made ill-considered statements about the plaintiff's site, which was not chosen for the new post office facility, and that the statements constituted, among other things, defamation under Maine state law. *Id.* The defendants moved the district court to substitute the United States in place of the Postal Service employee and submitted certification by the Attorney General that the employee's allegedly tortious conduct was within the scope of employment. *Id.* at 65. The district court granted the motion and dismissed the plaintiff's state law claims against the federal

**MEMORANDUM DECISION AND ORDER - 11**

employee. *Id.* at 68.

On appeal, the plaintiff argued that an adverse "personal animus" motivated the allegedly defamatory statements made by the defendants. *Id.* at 67. Motivations of personal animus, if substantiated, would place the comments outside the scope of employment even if the defendants made them during the temporal and spatial boundaries of employment. *Id.* at 67 n.10. The First Circuit rejected the Plaintiff's argument, stating:

> [Plaintiff's] brief *does not adequately argue* that [the postal service employee] had a *private purpose* in defaming the plaintiffs independent from his duties as an employee of the Postal Service so as to render his actions outside the scope of employment, *nor* does the brief or the complaint *suggest any reason for [the employee] to have such animus toward the plaintiffs* apart from those duties. Plaintiffs *never allege [the employee] had any personal motive to malign them*, *nor* do they allege *any relationship or incident with [the employee] that may have created personal animus*. Indeed, their theory that he retaliated against them because of their interference in the Postal Service's site selection process belies any personal motive.

*Id.* (emphasis added).

Here, unlike the plaintiff in *Davric*, Plaintiff alleges an adverse personal motive; although the Court does not find that Plaintiff supports her allegations regarding Defendant Oswald's motivations with evidence, she does provide evidence and a viable theory that draws into question Defendant Clark's motivations. The Court will first address the evidence regarding Defendant Oswald and second regarding Defendant Clark below.

**MEMORANDRUM DECISION AND ORDER - 12**

### (1) *Defendant Oswald*

The Court has reviewed the record and finds that Plaintiff has not provided sufficient evidence to contest Defendant Oswald's motivation for making an allegedly false report and statements during the investigation. While Plaintiff's affidavit alleges that Defendant Oswald failed to protect or assist Plaintiff from an alleged hostile work environment, Plaintiff fails to offer evidence or a theory to substantiate why Defendant Oswald might be personally motivated to retaliate against Plaintiff. With only Plaintiff's unsubstantiated allegation that Defendant Oswald was motivated purely by personal hostility, the Court must conclude that Defendant Oswald performed her actions, at least in part, in furtherance of the business and service for which the TSA employed her.

### (2) *Defendant Clark*

With regard to Defendant Clark's motivation, Plaintiff draws on the fact that prior to the events in question, Defendant Clark's girlfriend, a rental car employee at the airport, had been openly hostile toward her after Plaintiff complained to her superiors that Defendant Clark and his girlfriend were engaged in public displays of affection in the office and break room. (*Weeks Aff.*, Dkt. 13-2 at 5.) Perhaps not coincidentally, an anonymous rental car agent, whom Plaintiff claims could be Defendant Clark's girlfriend, made accusations against Plaintiff to Defendant Clark similar to those reported by Defendants. In turn, Defendant Oswald recorded these accusations in a report vaguely dated March-April Conversation, but the rental car agent chose to remain anonymous for fear of retaliation. (*Id.*) This event, along with Plaintiff's past accusations against

**MEMORANDRUM DECISION AND ORDER - 13**

Defendant Clark and the open hostility of Defendant Clark's girlfriend toward Plaintiff, are sufficient to give this Court pause to consider more evidence before determining whether to grant the United States' motion to substitute for Defendant Clark.

*Bergeron v. Henderson*, 47 F. Supp. 2d 61 (D. Me. 1999) provides an example of a case in which the court found that the plaintiff presented sufficient evidence of an adverse personal motive to warrant limited discovery and an evidentiary hearing. In that case, a female employee of the United States Postal Service alleged that her immediate supervisor undertook certain acts, in nine separate incidents, deliberately with intent to harass or retaliate against her. *Id.* Such acts included the direction and placement of her work station, ignoring the plaintiff's reports of sexual harassment, flirting with other female employees, manipulating the overtime system, warning her of consequences of reporting sexual harassment, and ignoring her requests not to have a male supervisor ride-along to inspect her delivery route. *Id.*

The *Bergeron* court acknowledged that such incidents could reasonably cause the plaintiff to become upset, but held that the plaintiff's emotional response is "immaterial to the scope-of-employment analysis." *Id.* at 74. The court rejected three of the plaintiff's nine allegations because either they "rest[ed] on the general quasi-legal allegations made in [the plaintiff's] unverified Amended Complaint" or "the government . . . provided an objective justification for each act and incident identified by Plaintiff's Amended Complaint and has supported its explanations with sworn declarations by [Defendants]." *Id.* at 68.

**MEMORANDRUM DECISION AND ORDER - 14**

As for the other six allegations, however, the *Bergeron* court found that, while "Plaintiff's proffer does not conclusively resolve that [the conduct] was due to a private retaliatory purpose . . . [it shows that] a genuine dispute as to the immunity-related facts exists on this record." *Id.* at 70. The plaintiff presented facts of evidentiary quality in her affidavit that, if true, placed the conduct outside the scope of employment and therefore created a genuine dispute as to the character of the acts in question – namely, whether [Defendants] acted with a private, discriminatory purpose or with work-related purpose. *Id.* at 79. Thus, the court recommended both discovery and an evidentiary hearing because the "immunity issue in this case primarily involves the intent and motive of [Defendants]." *Id.* at 81.

The situation before the Court resembles the *Bergeron* case in that the immunity-related facts and issue primarily involves Defendant Clark's intent and motives. As discussed above, Defendants' actions are of the kind that the TSA hired them to perform. Yet, the plaintiff in both this case and *Bergeron* made evidentiary-based allegations against the defendants that, if shown to be true, would place the defendants' actions outside the scope of employment.

The Court here concludes that the question regarding Defendant Clark's motivation cannot be resolved on the present record because a genuine, disputed issue exists. *Davric*, 238 F.3d at 66. Where the facts alleged are in controversy, the district court may hold an evidentiary hearing to resolve scope of employment issues. *Id.* at 67. The controversy exists because the government contends that Defendant Clark acted

**MEMORANDRUM DECISION AND ORDER - 15**

within his supervisory role, while Plaintiff's contentions about his motivations, if true, would place Defendant Clark's actions outside the scope of employment. Further, it would be consistent with *Bergeron* to order discovery prior to an evidentiary hearing to avoid "an extreme waste of judicial resources" in prematurely substituting the United States for Defendant Clark.

2.  **Conclusion**

After fully considering the record and the presumption set by the Attorney General's certification, the Court concludes that Plaintiff's challenge to Defendant Oswald's certification fails to raise any genuine issue sufficient to rebut the presumption. Therefore, the Court will grant the motion to substitute the United States in place of Defendant Oswald.

However, Plaintiff has presented a viable theory and evidence suggesting Defendant Clark had a personal, retaliatory purpose for his actions that will be in issue in connection with Plaintiff's claims in this lawsuit. As such, limited discovery and an evidentiary hearing are necessary for the Court to resolve the issue of whether Plaintiff has rebutted the certification and presumption that Defendant Clark acted within the scope of his employment. Because the first two prongs of the three-part scope of employment test have been satisfied by the United States with regard to Defendant Clark, the limited discovery and evidentiary hearing will address only the question of whether Defendant Clark's motivation in reporting and making allegations against Plaintiff was

**MEMORANDRUM DECISION AND ORDER - 16**

actuated to serve his employer or instead was purely personal, taking such actions outside the scope of his employment.

Accordingly, an evidentiary hearing will be set and the parties will be expected to meet and confer to reach a stipulation regarding the limited discovery, if any, needed in advance of the hearing and to submit a joint status report **within seven days of the date of this order** as to the discovery that will be completed prior to the evidentiary hearing. Additionally, the parties will inform the court as to the witnesses each party intends to call at the time of the hearing and the amount of time needed for each witness.

The Court will defer final ruling on the United States' motion to substitute itself in place of Defendant Clark until after completion of the evidentiary hearing. Additionally, the Court will reserve ruling on the government's motion to dismiss until after the evidentiary hearing regarding Defendant Clark is completed.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1. With regard to Defendant Oswald, the United States' Motion to Substitute (Dkt. 2) is granted.

2. With regard to Defendant Clark, the United States' Motion to Substitute and Dismiss (Dkt. 2) is deferred until the Court conducts an evidentiary hearing consistent with the above decision.

3. Plaintiff shall file with the Court on or before July 27, 2012, a list of witnesses to be called during the evidentiary hearing, the estimated duration of each witness'

testimony, and any discovery Plaintiff believes is necessary to facilitate the evidentiary hearing. The parties must meet and confer as to the discovery that they agree may be completed prior to the evidentiary hearing. Objections to any requested discovery shall be filed on or before August 3, 2012.

4. The evidentiary hearing shall take place on August 17, 2012, at 1:30 p.m., at the Federal Courthouse in Boise, Idaho. Counsel for the parties shall confer as to an amenable date within the above time frame and contact Judge Dale's Courtroom Deputy Amy Hickox at (208) 334-9387 to schedule the evidentiary hearing.

Dated: **July 23, 2012**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDRUM DECISION AND ORDER - 18**